[Cite as *State v. Ball*, 2020-Ohio-3156.]

STATE OF OHIO       )               IN THE COURT OF APPEALS

                   )ss:          NINTH JUDICIAL DISTRICT

COUNTY OF SUMMIT   )

STATE OF OHIO                           C.A. No.     29484

    Appellee

    v.                                 APPEAL FROM JUDGMENT

                                   ENTERED IN THE

WAYNE E. BALL                     COURT OF COMMON PLEAS

                                   COUNTY OF SUMMIT, OHIO

    Appellant                 CASE No.    CR 18 11 3925

DECISION AND JOURNAL ENTRY

Dated: June 3, 2020

TEODOSIO, Judge.

{¶1} Wayne Ball appeals the denial of his motion to suppress in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} According to Akron Police Officer Cory Siegferth, he was on patrol one morning around 1:00 a.m. when he heard three gunshots coming from a nearby area. He drove in the direction of the shots and began to canvass the area in his cruiser. About a minute after hearing the gunshots, Officer Siegferth noticed a man walking along the road toward him. While stopped at an intersection, he saw the man cross from the north side of the road to the south side outside of an approved crosswalk. The officer testified that he made eye contact with the man as they passed each other, and he decided to turn his cruiser around to ask whether the man heard the gunshots and because he had seen the man jaywalk.

{¶3} Officer Siegferth testified that he did a U-turn and pulled alongside the man, who had gone onto the sidewalk next to the road. The man turned toward the cruiser, but kept his body at an angle, obscuring one of his arms and making the officer think that he could be hiding something or was preparing to run or fight. Officer Siegferth exited his vehicle and began talking to the man, Mr. Ball, who he now recognized as someone he had met before during an investigation. Mr. Ball denied hearing any gunshots. According to Officer Siegferth, from his previous interaction with Mr. Ball, he knew that Mr. Ball was known to carry a firearm. He, therefore, asked Mr. Ball to put his arms up so that he could pat him down for weapons before letting him go on his way. As Mr. Ball raised his arms, he told Officer Siegferth that he did in fact have a firearm in his possession.

{¶4} Following the stop, the Grand Jury indicted Mr. Ball for having weapons while under disability, in violation of R.C. 29293.13, and carrying a concealed weapon, in violation of R.C. 2923.12. Mr. Ball moved to suppress the evidence gathered against him during the stop, arguing that Officer Siegferth did not have reasonable, articulable suspicion or probable cause to stop and frisk him. Following a hearing, the trial court denied Mr. Ball's motion. Mr. Ball subsequently pleaded no contest to the offenses, the trial court found him guilty, and the court sentenced him to two years imprisonment. Mr. Ball has appealed, assigning as error that the trial court incorrectly denied his motion to suppress.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN FINDING THE POLICE HAD PROBABLE CAUSE TO STOP APPELLANT FOR JAYWALKING AND DENYING APPELLANT'S SUPPRESSION MOTION.

{¶5}   Mr. Ball argues that the trial court should have granted his motion to suppress because Officer Siegferth did not have reasonable, articulable suspicion to stop him.  A motion to suppress presents a mixed question of law and fact:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.)  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶6}   "[A]lthough a police officer generally may not seize a person within the meaning of the Fourth Amendment unless he has probable cause to arrest him for a crime, 'not all seizures of the person must be justified by probable cause * * *.'"  *State v. Dunlap*, 9th Dist. Summit No. 28762, 2018-Ohio-3658, ¶ 7, quoting *Florida v. Royer*, 460 U.S. 491, 498 (1983).  "[N]ecessarily swift action predicated upon on-the-spot observations of the officer on the beat" "must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures."  *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  "[T]here is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'"  *Id*. at 21, quoting *Camara v. Mun. Court*, 387 U.S. 523, 534-535, 536-537 (1967).

{¶7}   To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, (1999), quoting *Terry* at 21.  "[I]t is imperative that the facts be judged against an objective standard:  would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the

belief' that the action taken was appropriate?" *Terry* at 21-22, quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925). "In forming reasonable articulable suspicion, law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *State v. Taylor*, 9th Dist. Summit No. 26693, 2013-Ohio-3906, ¶ 7, quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

{¶8} At the suppression hearing, Officer Siegferth initially gave two reasons for deciding to approach Mr. Ball. One was that he wanted to ask Mr. Ball about the gunshots he had heard. The other was that he had seen Mr. Ball jaywalk across the road. Mr. Ball argues that the officer did not have reasonable articulable suspicion or probable cause to stop him because his crossing of the road from one to the other outside of a crosswalk did not constitute jaywalking under the City of Akron's municipal code.

{¶9} Although the jaywalking ordinance was discussed during the suppression hearing, Officer Siegferth also testified that he saw Mr. Ball walking in the roadway instead of on the improved sidewalks on either side of the road, which was a violation of a different city ordinance. In its decision overruling Mr. Ball's motion to suppress, the trial court determined that Officer Siegferth had probable cause to stop Mr. Ball because he had seen Mr. Ball violate the ordinance concerning walking in the roadway when there is a sidewalk available.

{¶10} In his brief, Mr. Ball has not challenged the trial court's determination that Officer Siegferth had probable cause to stop him because he violated the city ordinance prohibiting pedestrians from walking in the street if a sidewalk is available. We, therefore, conclude that Mr. Ball has failed to establish that the trial court's denial of his motion to suppress was incorrect. *See In re Estate of Hall*, 67 Ohio App.3d 715, 720 (4th Dist.1990) ("It is appellant's burden, as a basic

principle of appellate review, to affirmatively demonstrate in the record the error claimed."); *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 55. Mr. Ball's assignment of error is overruled.

### III.

{¶11} Mr. Ball's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO GUEST, Assistant Prosecuting Attorney, for Appellee.